IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RANDY TALLEY,

                Plaintiff,

v.

CARL GLOEDE and DANE COUNTY,

                Defendants.

OPINION and ORDER

23-cv-693-jdp

---

    Plaintiff Randy Talley was assaulted by another inmate while incarcerated at the Dane County jail on a probation hold. Talley contends that deputy officer Carl Gloede, who was on duty at the time of the attack, violated Talley's constitutional rights by failing to protect him from the assault. Talley also contends that the jail's early morning staffing policy was inadequate to protect against inmate-on-inmate assaults. Defendants move for summary judgment.

    The parties agree for the purposes of summary judgment that Talley's claims are governed by the Fourteenth Amendment. For his claim against Gloede, the question is whether Gloede acted reasonably in addressing the risk of harm. Gloede responded promptly when he heard arguing in Talley's cellblock and decided to have the two inmates lock down in their respective cells. His decision was reasonable because it was not predictable that the other inmate would take advantage of the few seconds before Talley locked his cell to attack Talley.

    As for the claim against the county, Talley has no evidence that the jail had notice that its staffing policy created a risk of assault. The court will grant summary judgment for defendants and close the case.

UNDISPUTED FACTS

The following facts are undisputed.

This lawsuit concerns an assault that occurred at the Dane County jail, where plaintiff Randy Talley was incarcerated on a probation hold. Talley was housed in Cellblock 607, a medium security block consisting of eight private cells and a shared dayroom. The other inmate involved in the assault, Jerome Wheeler, had moved into Cellblock 607 a few hours earlier. Wheeler and Talley had no history of conflict.

The assault occurred on the morning of October 18, 2020. Talley was sitting in the dayroom looking at a tablet when Wheeler entered and accused Talley of stealing money from his tablet account. Wheeler and Talley began arguing, though Talley does not remember what was said. At one point, Wheeler "took a swing" at Talley, but didn't touch him. After arguing for a few minutes, Talley walked to a window that looked out into the hallway and called for an officer.

Defendant Carl Gloede was one of two deputies on duty in Cellblock 607 that morning. Gloede was working on morning breakfast duties when he heard yelling in Cellblock 607. He arrived outside the cellblock and found Talley at the window and Wheeler standing between the inner and outer doors, both trying to speak with Gloede. Wheeler accused Talley of theft and Talley said that Wheeler was crazy and had taken a swing at him.

Gloede decided to have both Talley and Wheeler lock down in their cells until after breakfast, when he would have more time to investigate their complaints. He ordered both inmates to return to their cells and lock them. Talley walked back to his cell, with Wheeler following behind him.

Talley entered his cell and turned around. Wheeler leaned back, assumed a fighting posture, and lunged into Talley's cell, attacking Talley. Gloede immediately called for backup, which took about a minute to arrive. Deputies entered the cellblock and separated Talley and Wheeler. Talley suffered serious injuries to his face and eye as a result of Wheeler's assault.

ANALYSIS

Talley asserts constitutional claims against Gloede and Dane County. Summary judgment is appropriate if, after drawing all reasonable inferences in the non-moving party's favor, the material facts are undisputed and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011).

**A. Claim against Gloede**

Talley contends that Gloede violated his constitutional rights by failing to protect him from Wheeler's assault. It is still unsettled whether such claims brought by inmates on a probation hold are governed by the Eighth Amendment or the Fourteenth. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 592–93 (7th Cir. 2003) (discussing but not deciding the issue); *Brandy v. Marquette Cnty. Jail*, No. 20-cv-502-jdp, 2020 WL 4219825, *2 n.1 (W.D. Wis. July 23, 2020) (same). But both parties apply the Fourteenth Amendment standard in their briefs for the purposes of summary judgment, so the court will do the same.

A Fourteenth Amendment claim for failure-to-protect has four elements: (1) the defendant made an intentional decision about the conditions of the plaintiff's confinement; (2) those conditions placed the plaintiff at substantial risk of serious harm; (3) the defendant's decision was objectively unreasonable; and (4) the defendant's decision caused the plaintiff's

3

injuries. *See Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). Talley bases his claim on Gloede's decision to have Talley and Wheeler lock down at the same time. He contends that Gloede forced Talley into a defenseless position in his cell when Wheeler was still out in the open and able to move freely.

The parties focus on the third element of a failure-to-protect claim, which is whether Gloede's decision to have Talley and Wheeler lock down at the same time was unreasonable. To establish that Gloede acted unreasonably, Talley must show that Gloede failed to take reasonable measures to address a substantial risk of harm to Talley. *Davis v. Rook*, 107 F.4th 777, 780 (7th Cir. 2024) (citing *Echols v. Johnson*, 105 F.4th 973, 974–75 (7th Cir. 2024)).

Talley has not made the required showing. The undisputed facts are that Gloede knew that Wheeler and Talley had been arguing in the dayroom and that Wheeler had "taken a swing" at Talley. Gloede didn't have time to investigate at that moment, so he ordered both inmates to lock down in their cells until after breakfast. Gloede's order left Talley briefly exposed to attack because it took a few seconds for Talley to enter his cell and close the door. But Wheeler and Talley were not actively fighting when Gloede gave the order. A reasonable deputy in Gloede's position would not have anticipated that Wheeler would take advantage of those few seconds to attack Talley. *See Thomas*, 39 F.4th at 842 ("The constitutional expectation 'is that guards act responsibly under the circumstances that confront them,' not that they anticipate every potential danger facing a detainee.") (quoting *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004)).

Talley argues that Gloede was on notice of the imminent violence because he knew Wheeler had attempted to strike Talley. Specific threats from another inmate are sufficient to alert officers to a substantial risk of harm. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir.

4

2015). So Talley would have a point if Gloede had done nothing to address the risk of harm. But Gloede attempted to separate Wheeler and Talley by ordering them to lock down until he could investigate. This was not an unreasonable way to address the risk of harm posed by Wheeler.

Talley contends that Gloede acted unreasonably because he had better alternatives. Talley says that Gloede could have called for backup or ordered Talley and Wheeler to lock down one a time. Talley provides a report from corrections expert Alan Pasley, who opined that Gloede "should have" immediately called his partner for assistance and that it "would have been a better option" for Gloede to order the inmates to return to their cells one at a time. Dkt. 29-2. Talley also points out that Wheeler was standing between the inner and outer doors to the cellblock while he was talking to Gloede, so Gloede could have physically sealed Wheeler off from Talley by using a button in the hallway to close the inner door.

Even if a jury found that Gloede had better alternatives, that doesn't create a triable issue as to whether he acted unreasonably. The constitution does not require jails to adopt best practices. *See Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020). The question turns on whether a reasonable deputy would have appreciated that Wheeler might attack Talley during the few seconds it took for Talley to close and lock his cell door. For the reasons explained above, a reasonable deputy would not have appreciated that risk.

Talley cites *Miller v. Mascillino*, No. 15-cv-11746, 2023 WL 6276526 (N.D. Ill. Sept. 26, 2023), and *Peate v. McCann*, 294 F.3d 879 (7th Cir. 2002), but neither case is analogous. In *Miller*, an officer placed Miller into a holding cell even though he knew Miller was supposed to be kept separate from another inmate in that cell. Talley argues that Gloede's order also forced two inmates together who were known to be aggressive toward each other. But Talley

5

and Wheeler were already housed together. What Gloede did was order them to separate. The method he chose opened a brief opportunity for further aggression. But Gloede had no reason to believe that Wheeler would use that brief opportunity to assault Talley.

*Peate* is even less helpful to Talley. In that case, another inmate attacked Peate with a mesh laundry bag loaded with rocks. 294 F.3d 879. The defendant officer took the laundry bag away but then gave it back to the offending inmate, who promptly used it to attack Peate again. But this case is nothing like *Peate*. Gloede did not arm Wheeler, nor did he give Wheeler an obvious opportunity to attack Talley. Gloede was attempting to separate them. The risk from what Wheeler did is apparent only in hindsight.

Talley also argues that Gloede admitted that what he did was objectively unreasonable because Gloede said that there were things he could have done better and because Gloede apologized to Talley after the assault. But regret in hindsight is not evidence that Gloede acted unreasonably in the moment.

In sum, a reasonable deputy in Gloede's position would not have appreciated that having Talley and Wheeler lock down at the same time created a substantial risk of harm. Gloede is entitled to summary judgment on Talley's Fourteenth Amendment claim for failure-to-protect.

**B. Claim against the county**

Talley asserts a constitutional claim against Dane County. Municipalities such as the county are liable for constitutional violations arising from their policies or customs. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 616 (7th Cir. 2022). To prevail on a claim against the county, plaintiff must have evidence of (1) an action pursuant to a municipal policy or practice; (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that

the policy would lead to constitutional violations; and (3) causation, meaning the municipal action was the moving force behind the constitutional injury. *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020). Individual liability is not always a prerequisite for municipal liability. *Id.* (citing *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017) (en banc)).

Talley contends that it was constitutionally deficient for the county to have only two deputies on duty in the early morning, one who conducts inmate headcount and the other who handles breakfast duties. Talley says that this leaves no one available to watch the jail monitors for potential inmate conflicts or to assist other deputies if there is an inmate conflict. Talley says that this policy caused Wheeler's assault because no deputy observed the conflict early enough to head it off and no second deputy was available to help Gloede remove either Talley or Wheeler from the cell block safely.

The county challenges all three elements of municipal liability, but the court will focus on the culpability element. To show that the county was on notice that a policy was constitutionally inadequate, Talley must show either (1) a prior pattern of similar constitutional violations resulting from the policy; or (2) that the policy is so plainly inadequate that the risk that it would lead to a constitutional violation was obvious. *Helbachs Café LLC v. City of Madison*, 46 F.4th 525, 530–31 (7th Cir. 2022).

Talley concedes that he is unable to meet his burden for the culpability element. But he contends that the municipal liability claim should proceed anyway because Dane County "does not keep track of inmate fights" and "should not be rewarded for this failure to keep crucial information." Dkt. 25, at 22.

Talley's assertion lacks factual support. The evidence shows that the county does track inmate fights; Talley simply didn't pursue this evidence in discovery. Talley asked the county

7

in an interrogatory to identify the "number of fights or physical altercations between inmates at the Dane County jail severe enough to warrant discipline of an inmate for fighting." Dkt. 29-3, ¶ 2. The county objected on the basis that the interrogatory was disproportionate to the needs of the case. But the county also responded that the jail tracks several types of incidents, including fights, as "jail rule violations" in its data system, so to identify the number of fights, the jail would need to manually review thousands of data system entries to isolate the fights. *Id.* Talley could have moved to compel the county to manually review the jail's data system, but he did not do so. Because Talley concedes that he has no evidence to support a finding of culpability by the county, the court will grant summary judgment to the county on the municipal liability claim.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 19, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered January 28, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge